ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Energy & Natural Resources Division
MEREDITH L. FLAX, Deputy Section Chief
JOHN H. MARTIN, Senior Trial Attorney (Colo. Bar #32667)
Wildlife & Marine Resources Section
999 18th St., Suite 600 North Terrace
Denver, CO 80202
Tel: 303-319-5359 (Martin)
Fax: 303-844-1350
Email: john.h.martin@usdoj.gov

*Attorneys for Federal Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| FA‘ASAO AMERIKA SAMOA and CONSERVATION COUNCIL FOR HAWAI‘I,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL MARINE FISHERIES SERVICE and HOWARD LUTNICK, in his official capacity as Secretary of Commerce of the United States,<br><br>Defendants. | CASE NO. 1:26-CV-00438-JAO-KJM<br><br>Federal Defendants' Memorandum in Support of Motion to Continue Hearing Date(s) on Plaintiffs' Motion for Summary Judgment and Motion to Consider Extra-record Evidence<br><br>Judge: Hon. Jill A. Otake<br><br>Trial Date: None set<br><br>Related to Dkt. Nos. 15, 17, 18, & 19 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ............................................3

LEGAL BACKGROUND .........................................................................7

ARGUMENT .........................................................................................8

I. Plaintiffs' substantive motions are premature and should not be briefed or heard before issuance of a scheduling order following a case management conference. ...........................................8

II. Plaintiffs lack good cause to file their motions before the Service files the administrative record. ...........................................11

III. Expediting summary judgment and consideration of extra-record evidence would significantly prejudice the Service. ...................14

IV. Plaintiffs will not be prejudiced if their claims against the Service are not expedited on the schedule they seek. ..............................21

CONCLUSION ....................................................................................23

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ariz. Mining Reform Coal. v. U.S. Forest Serv.*,
172 F.4th 641 (9th Cir. 2026)....................10

*Califano v. Sanders*,
430 U.S. 99 (1977)....................10

*Camp v. Pitts*,
411 U.S. 138 (1973).................... 10, 12

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971).................... 10, 13

*City of Laguna Niguel v. Fed. Emergency Mgmt. Agency*,
No. SACV 09-198 (MLGx), 2009 WL 3122490 (C.D. Cal. Sept. 28, 2009)....6, 7

*City of Tacoma v. Fed. Energy Regul. Comm'n*,
460 F.3d 53 (D.C. Cir. 2006)....................19

*Cortes-Ramos v. Martin-Morales*,
178 F.4th 760 (1st Cir. 2026)....................15

*Ctr. for Biological Diversity v. EPA*,
141 F.4th 153 (D.C. Cir. 2025)....................17

*Ctr. for Biological Diversity v. EPA,*
56 F.4th 55 (D.C. Cir. 2022)....................17

*Ctr. for Biological Diversity v. Haaland*,
562 F. Supp. 3d 68 (D. Ariz. 2021)....................10

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*,
450 F.3d 930 (9th Cir. 2006)....................12

*CTS Corp. v. EPA*,
759 F.3d 52 (D.C. Cir. 2014)....................13

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*

591 U.S. 1 (2020) ....................................................................................5

*Desert Protective Council v. U.S. Dep't of Interior*,
No. 12cv1281-(PCL), 2012 WL 6678056 (S.D. Cal. Dec. 21, 2012)........... 13, 14

*Firearms Regul. Accountability Coal., Inc. v. Garland,*
Case No. 23-CV-00003, 2024 WL 4920007 (D.N.D. Aug. 22, 2024) ................11

*Fla. Power & Light Co. v. Lorion*,
470 U.S. 729 (1985) ....................................................................................10

*Franklin v. Massachusetts*,
505 U.S. 788 (1992) ......................................................................................5

*Gofron v. Picsel Techs., Inc.*,
804 F. Supp. 2d 1030 (N.D. Cal. 2011) ..........................................................14

*Gupta v. U.S. Att'y Gen.*,
Case No. 13-cv-1027-Orl-40KRS, 2014 WL 12868884 (M.D. Fla. Nov. 21, 2014)......................................................................................................11

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992).............................................................................6

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ....................................................................................5, 7

*Nw. Env't Advocs. v. United States Env't Prot. Agency*,
No. C20-1362 MJP, 2021 WL 2206497 (W.D. Wash. June 1, 2021) ...................7

*Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*,
18 F.3d 1468 (9th Cir. 1994)...........................................................................10

*Occidental Eng'g Co. v. Immigr. & Naturalization Serv.*,
753 F.2d 766 (9th Cir. 1985)...........................................................................10

*Penland v. Mabus*,
78 F. Supp. 3d 484 (D.D.C. 2015) ...................................................................11

*Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*,
898 F.2d 1410 (9th Cir. 1990)..........................................................................19

*Rybachek v. EPA*,
904 F.2d 1276 (9th Cir. 1990) ....... 14

*Tribal Vill. of Akutan v. Hodel*,
869 F.2d 1185 (9th Cir. 1988) ....... 19, 20

*Unigard Sec. Ins. v. Lakewood Eng'g & Mfg. Corp.*,
982 F.2d 363 (9th Cir. 1992) ....... 5

*Wild Fish Conservancy v. Nat'l Park Serv.*,
No. C12-1509, 2012 WL 6615925 (W.D. Wash. Dec. 19, 2012) ....... 8

**Statutes**

5 U.S.C. § 706 ....... 10

5 U.S.C. § 706(2)(A) ....... 5

16 U.S.C. § 1536 ....... 2

16 U.S.C. § 1540(g) ....... 16

43 U.S.C. § 1331 ....... 19

**Rules**

Fed. R. Civ. P. 12(a)(2) ....... 4

Fed. R. Civ. P. 16(b)(4) ....... 9

Fed. R. Civ. P. 56 ....... 7

Fed. R. Civ. P. 56(d) ....... 14

L.R. 26.1(c) ....... 14

**Regulations**

30 C.F.R. § 582.4 ....................................................................................3

30 C.F.R. § 582.12 ....................................................................................3

30 C.F.R. § 582.21(a)....................................................................................3

30 C.F.R. § 582.21(d) ....................................................................................3

50 C.F.R. § 402.12(b) ....................................................................................16

50 C.F.R. § 402.13 ....................................................................................16

50 C.F.R. § 402.14(a)....................................................................................16

50 C.F.R. § 402.14(b) ....................................................................................16

50 C.F.R. § 402.15(a)....................................................................................19

## INTRODUCTION

Federal Defendants the National Marine Fisheries Service and Howard Lutnick, Secretary of the Department of Commerce, (collectively referred to as "the Service") respectfully move the Court to continue the October 30, 2026, hearing date(s) currently set for Plaintiffs' Motion for Summary Judgment and Plaintiffs' Motion to Consider Extra-record Evidence and related briefing deadlines for both motions. Dkt. Nos. 15, 17, 18, & 19. These hearing date(s) for Plaintiffs' two dispositive motions should be vacated and the motions held in abeyance until the Court issues a superseding scheduling order following the Rule 16 scheduling conference currently set for October 19, 2026. *See* Dkt. No. 8.

Plaintiffs' premature motions for summary judgment and to consider extra-record and expert opinion evidence are a blunt tool to force an inefficient, duplicative, and prejudicial schedule on the Court and Service. It is improper to litigate both a rushed motion for summary judgment and to determine whether to allow extra-record and expert opinion evidence before the Service even files its administrative record or Department of Justice trial counsel has a reasonable opportunity to review the Service's administrative record, conduct other appropriate pretrial tasks such as those related to Plaintiffs' proffered extra-record expert opinion evidence, and prepare the agency's defense in dispositive motion

practice.

Moreover, Plaintiffs intend to soon add new claims against the U.S. Department of the Interior ("Interior"), the "action agency" proposing the lease sale that is Plaintiffs' ultimate target. Plaintiffs have notified the Service of their intention to bring claims against Interior alleging violations of the Endangered Species Act ("ESA") for the same basic reasons alleged in their current Complaint against the Service, and to allege other violations of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 *et seq*., the statute that authorizes Interior's future leasing action. *See* Exhibit A (Plaintiffs' notice of intent to sue). Thus, Plaintiffs' premature motions will also bifurcate this case between two federal agencies in an unusual fashion despite alleging overlapping claims challenging their joint consultation under the ESA.

Plaintiffs' bifurcated approach is also entirely premature in light of the fact that Interior has made no final decision whether and when to hold a lease sale. Hence judicial economy is served by allowing this case to proceed in an ordinary and coordinated fashion and following a Rule 16 scheduling conference. Plaintiffs' unilateral decision to advance their dispositive motions clearly prejudices Federal Defendants.

Instead of holding the earliest possible hearing on Plaintiffs' motions for summary judgment and to consider extra-record and expert opinion evidence, the

Service requests that the Court vacate the October 30 hearing date currently set on both of Plaintiffs' motions (Dkt. Nos. 15 & 17) and hold Plaintiffs' motions in abeyance until after the Court issues a superseding scheduling order. This relief is entirely consistent with the Court's August 18, 2026, Order setting a scheduling conference for October 19, 2026. *See* Dkt. No. 8; *see also* L.R. 16.2.

The Service requests the opportunity to be heard, either in a status conference to address case management or in oral argument on this motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 18, 2026, Plaintiffs filed this lawsuit, alleging that the Service acted arbitrarily and capriciously and in violation of the Administrative Procedure Act ("APA") and the ESA when it issued a February 13, 2026, letter of concurrence under ESA Section 7, 16 U.S.C. § 1536, to the United States Department of the Interior's Marine Minerals Administration (hereinafter referred to as "Interior"). The Service issued its letter of concurrence as part of an informal ESA Section 7 consultation with Interior on an action Interior has proposed (but not yet taken) to issue up to two commercial leases for marine mineral development in the Outer Continental Shelf ("OCS") offshore of American Samoa and expected "preliminary activities" after lease issuance, limited to early-stage data collection and surveys necessary for a future lessee to develop a Delineation,

Testing, and/or Mining Plan.[1] 30 C.F.R. § 582.21(d) (defining permissible "preliminary activities" as essentially those surveys "which have no significant adverse impact on the natural resources of the OCS"). Any plans beyond preliminary activities (detailed in future Delineation, Testing, and/or Mining plans) would be subject to review under the ESA and other authorities as appropriate and separate decision by Interior before a lessee could implement such a plan. *See*, *e.g.*, *id.* § 582.21(a)[2]; *see also id.* § 582.12 (director's responsibilities); *id.* § 582.4 (opportunities for review and comment).

Defendants' Answer or other response to the Complaint is due on or about October 20, 2026, based on an August 21, 2026, service date on the U.S. Attorney's Office for the District of Hawaii.[3] Fed. R. Civ. P. 12(a)(2). However,

[1] The Service's letter of concurrence describes Interior's proposed action as follows: "The proposed federal action is to issue up to two commercial leases for marine mineral development in the [OCS] and to authorize the corresponding preliminary activities which are limited to early-stage data collection and surveys necessary to develop a comprehensive Delineation, Testing, or Mining Plan." Service's Letter of Concurrence, at 1 *available at* https://www.boem.gov/marine-minerals/critical-minerals/mma-leadership-team-and-reports.

[2] This regulation provides in pertinent part that: "No exploration, testing, development, or production activities, except preliminary activities, shall be commenced or conducted on any lease except in accordance with a plan submitted by the lessee and approved by the Director. Plans will not be approved before completion of comprehensive technical and environmental evaluations to assure that the activities described will be carried out in a safe and environmentally responsible manner." 30 C.F.R. § 582.21(a).

[3] Defendants continue to investigate the dates of service of process on all required

the Court has already set a Rule 16 Scheduling Conference to occur on October 19, 2026, before Magistrate Judge Kenneth J. Mansfield, preceded by ordinary case planning submissions. Dkt. No. 8.

Plaintiffs' counsel informed undersigned counsel on August 28, 2026, during a video meet-and-confer conference that Plaintiffs intended to file a motion for summary judgment and a motion for leave to introduce extra-record evidence (including expert opinion evidence) on or before September 4, accompanied by a motion to expedite seeking to have the Court rule on these motions before Interior might conduct a lease sale, which Interior announced in a Proposed Leasing Notice may occur on November 19, 2026. Counsel also discussed Plaintiffs' intention to notice their motions for argument on or around October 16.

Plaintiffs in fact filed their motion for summary judgment and motion to consider extra-record evidence on September 4, 2026. Dkt. Nos. 15, 16, 17. The Court promptly set those motions for hearing on October 30, with both the Services' oppositions due on September 25, 2026. Dkt. Nos. 18 & 19. Perhaps owing to this prompt setting, Plaintiffs declined to file a separate motion to expedite a decision on these motions, as they had earlier represented to undersigned counsel. That change in tactics now requires the Service to file this

---

entities.

motion to continue the October 30 hearing date to request that the Court address whether such an early briefing schedule and hearing date is warranted given the prejudice to the Service.

The current briefing schedule that resulted from Plaintiffs' early filing of their dispositive motions before any case planning or pretrial activities occurred requires the Service to respond to Plaintiffs' motions for summary judgment and for the admission of extra-record and expert opinion evidence against the Service on September 25, 2026. Dkt. Nos. 18 & 19. Such a schedule deprives the Service of every benefit and opportunity of pretrial preparation before having to brief summary judgment and the admissibility of extra-record evidence, including any reasonable opportunity to (1) prepare, review, and file the Service's administrative record, (2) engage in discovery (if necessary, such as in the absence of the mandatory expert witness report under Rule 26(a)(2)) and (3) rebut or move to strike Plaintiffs' extra-record evidence (specifically, their proffered expert opinion), to say nothing of (4) a reasonable opportunity to prepare a merits defense. It also deprives the United States the ability to present a unified defense of claims against the Service and Interior and deprives the Court of the benefit of reviewing both agencies' administrative records when determining whether to grant summary judgment.

On September 8, 2026, undersigned counsel again conferred with Plaintiffs'

counsel about their now-abandoned motion to expedite and the Service's alternative motion to continue the October 30 hearing date and related application to shorten time on the motion to continue.

## LEGAL BACKGROUND

The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992). It directs that agency actions be "set aside" if they are "arbitrary" or "capricious," 5 U.S.C. § 706(2)(A). "Under this narrow standard of review, … a court is not to substitute its judgment for that of the agency, … but instead to assess only whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* 591 U.S. 1, 16 (2020) (citation modified).

A district court has wide discretion "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Unigard Sec. Ins. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) ("Courts are invested with inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of case.'") (citations omitted). Consistent with

this power, courts have declined to consider motions for summary judgment where cases are still in the very early stages and scheduling conferences have not yet been held. *See, e.g.*, *City of Laguna Niguel v. Fed. Emergency Mgmt. Agency*, No. SACV 09-198 (MLGx), 2009 WL 3122490, at *7 (C.D. Cal. Sept. 28, 2009).

## ARGUMENT

### I. Plaintiffs' substantive motions are premature and should not be briefed or heard before issuance of a scheduling order following a case management conference.

Plaintiffs' gambit in unilaterally filing their dispositive merits motions at their earliest opportunity is contrary to rules that require a more orderly and even-handed case management approach, particularly in APA cases. The proper approach would be to hold Plaintiffs' motions in abeyance until after the Court-ordered October 19 scheduling conference and issuance of a comprehensive and reasonable Scheduling Order following that conference. Dkt. No. 8.

Plaintiffs' expedited approach is fundamentally contrary to this Court's Order setting the Rule 16 scheduling conference and the orderly process established therein for the Court to consider both parties' comprehensive case management proposals. The Court has ample authority to reject Plaintiffs' efforts to nullify the Court's August 18, 2026 Order setting a different case management schedule. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) ("A scheduling order is not a frivolous piece of paper, idly entered, which

can be cavalierly disregarded by counsel without peril."); *Landis*, 299 U.S. at 254 ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

Deferral of Plaintiffs' premature dispositive motions also accords with the intent of the Federal Rules of Civil Procedure, which provide the Court with the authority to deny or to stay summary judgment briefing until a scheduling conference is conducted. *See, e.g.*, Fed. R. Civ. P. 56 (2010 Amendment Note for subdivision (b), "Although the rule allows a motion for summary judgment to be filed at the commencement of an action, in many cases the motion will be premature until the nonmovant has had time to file a responsive pleading or other pretrial proceedings have been had. Scheduling orders or other pretrial orders can regulate timing to fit the needs of the case.").

Caselaw also supports deferral as well as outright denial without prejudice of Plaintiffs' several motions. *See City of Laguna Niguel*, 2009 WL 3122490, at *7 (holding summary judgment motion "premature" because "this case is in its very early stages and a scheduling conference has not even been held"); *Nw. Env't Advocs. v. United States Env't Prot. Agency*, No. C20-1362 MJP, 2021 WL 2206497, at *5 (W.D. Wash. June 1, 2021) ("It is thus premature for EPA to ask the Court to determine liability without the full administrative record."); *see also*

*Wild Fish Conservancy v. Nat'l Park Serv.*, No. C12-1509, 2012 WL 6615925, at *4 (W.D. Wash. Dec. 19, 2012) (premature summary judgment motions are disfavored).

Plaintiffs' litigation strategy, if permitted, will hinder the Court in its basic task to decide this case on its merits on a reasonable schedule. That dramatic conclusion is warranted by the fact that Plaintiffs' proposed schedule ignores every intermediate requirement necessary for a just determination of Plaintiffs' claims—such as allowing the Service a reasonable opportunity to prepare, review, and file its administrative record and prepare its litigation defenses, as well as the opportunity to test through discovery or rebut Plaintiffs' proffer of extra-record evidence, including expert opinion evidence.

And the harm to the Service of departing from an ordinary APA and pre-merits case management approach outweighs the speculative harm Plaintiffs may proffer. Interior has not yet announced whether it will conduct a lease sale in a Final Leasing Notice. And such notice would precede any sale by at least 30 days, with a longer period of time until Interior might decide whether to issue a lease and potential preliminary activities might occur. 30 C.F.R. § 581.17(a)). Expedited summary judgment is not appropriate where there is little immediate risk of harm to Plaintiffs, nor does such speculation outweigh the immediate prejudicial effect

on the Service.[4]

Plaintiffs' efforts to ignore all the intermediate steps necessary to insure the Service a fair opportunity to contest Plaintiffs' claims on their merits ignores that the Court has already entered an Order establishing a different approach to case management. And that Order requires a reasonable process for the parties to propose, and the Court to enter, a scheduling order addressing all necessary elements of case management. Plaintiffs' motions for summary judgment and to consider extra-record evidence should be held in abeyance until the Court conducts the scheduling conference set for October 19, consistent with the Federal Rules, prudence and equity.

## II. Plaintiffs lack good cause to file their motions before the Service files the administrative record.

Plaintiffs have no good cause to rush forward with their summary judgment and extra-record motions before the Service files its administrative record, which is central to this case. The Court cannot properly decide this case without review of that agency administrative record. Deciding summary judgment and the admissibility of extra-record and expert opinion evidence in the absence of the

[4] Undersigned counsel has pre-existing plans to be out of the office from September 17 through 25 and from October 14 through 30. When counsel was assigned this case, Defendants and DOJ counsel were unaware that Plaintiffs intended to seek a final merits decision on this case before mid-November 2026 by filing an immediate motion for summary judgment.

Service's administrative record would be contrary to bedrock administrative law principles. This established law negates any rationale for requiring the Service to brief Plaintiffs' dispositive motions before it can undertake any of the usual pretrial case preparation activities or before the Court conducts the initial Rule 16 scheduling conference it has already set. Fed. R. Civ. P. 16(b)(4) (allowing modification of a scheduling order "only for good cause and with the judge's consent.")

Plaintiffs' dispositive motions are clearly premature given that the Service has not finalized or lodged its administrative record (nor has DOJ trial counsel had any opportunity to review its contents). Plaintiffs' Complaint concedes that this case will be decided under the APA's judicial review provisions, by alleging jurisdiction under the APA and alleging, *inter alia*, that the Service's decision is arbitrary and capricious. Dkt. No. 1 ¶¶ 10, 45-46, 86, 92, 96-97 (citing APA, especially APA Section 706). In administrative agency cases under the APA, "the district court's role is not to resolve facts, but to 'determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Ctr. for Biological Diversity v. Haaland*, 562 F. Supp. 3d 68, 76 (D. Ariz. 2021) (quoting *Occidental Eng'g Co. v. Immigr. & Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985)); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994) ("[T]his case

involves review of a final agency determination under the [APA], 5 U.S.C. § 706; therefore, resolution of this matter does not require fact finding on behalf of this court. Rather, the court's review is limited to the administrative record[.]").

Decades of administrative law establish that an agency's administrative record is the focal point for judicial review of agency action under the APA. *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985) ("The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." (citation omitted)); *see, e.g.*, *Ariz. Mining Reform Coal. v. U.S. Forest Serv*., 172 F.4th 641, 661 (9th Cir. 2026) ("Judicial review of agency decision-making should be focused on the administrative record." (citation omitted).

These foundational principles of administrative law contradict Plaintiffs' approach asking that the Court decide (and the parties brief and argue) their motion for summary judgment in the absence of an agency's administrative record. *See, e.g., Firearms Regul. Accountability Coal., Inc. v. Garland,* Case No. 23-CV-00003, 2024 WL 4920007, at *1 (D.N.D. Aug. 22, 2024) (denying summary judgment as premature where it preceded filing of agency administrative record); *Penland v. Mabus*, 78 F. Supp. 3d 484, 495 (D.D.C. 2015) (denying motion to dismiss in APA case because "[w]ithout the administrative record, the Court has no

basis to determine whether [a Navy] decision should be upheld or reversed.”); *Gupta v. U.S. Att'y Gen.*, Case No. 13-cv-1027-Orl-40KRS, 2014 WL 12868884, at *1 (M.D. Fla. Nov. 21, 2014) (same).

So too here, Plaintiffs’ full-court pressure on the Court to quickly decide this case without providing adequate opportunity for the Service to compile and lodge its administrative record—or for trial counsel to have a reasonable opportunity to review and brief the Court based on that agency administrative record—ignores fundamental principles of administrative law. Their push for premature merits briefing based on limited, extra-record evidence is contrary to law insofar as the primary foreseeable consequence would be for the Court to improperly hazard erroneous decisions on Plaintiffs’ two dispositive motions.

## III. Expediting summary judgment and consideration of extra-record evidence would significantly prejudice the Service.

Plaintiffs seek to bypass <u>every</u> interim milestone that allows both sides to a lawsuit adequate opportunity to prepare their cases on a reasonable timeframe. Disregard of those interim events significantly prejudices the Service.

For example, Plaintiffs’ approach precludes the Service from any opportunity to challenge their proffer of extra-record evidence, particularly their proffer of expert opinion evidence. Such extra-record evidence is ordinarily impermissible in judicial review of APA claims. *Camp*, 411 U.S. at 142 (noting

that when considering a claim arising under the APA, the scope of judicial review is confined to "the administrative record already in existence, not some new record made initially in the reviewing court."); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943-44 (9th Cir. 2006) ("We normally refuse to consider evidence that was not before the agency because 'it inevitably leads the reviewing court to substitute its judgment for that of the agency.'") (internal citations omitted). Indeed, under the APA, review is to be "based on the full administrative record that was before the Secretary *at the time he made his decision*." *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971) (emphasis added); *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) ("[i]t is black-letter administrative law that in an [APA] case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" (citation omitted)). At bottom, Plaintiffs ask the Court to do that which it cannot do—consider whether the Services' actions were arbitrary and capricious under the APA without the benefit of the administrative record but only in light of evidence that the Plaintiffs have cherry-picked and produced specifically for this litigation.

Moreover, disputes regarding the administrative record should be raised by Plaintiffs and resolved before summary judgment briefing commences, not

concurrently with summary judgment briefing.[5] Plaintiffs' rushed approach to briefing summary judgment based entirely on extra-record evidence is improper precisely because it ignores the agency administrative record.

Setting aside Plaintiffs' heavy burden to prove the admissibility of extra-record evidence on APA claims, Plaintiffs would also deprive the Service of any opportunity to challenge their expert opinion evidence for reasons beyond APA record review principles, such as testing that extra-record evidence through discovery or a *Daubert* motion, or to offer its own rebuttal evidence. *See* Dkt. No. 8 ("Except as otherwise provided by L.R. 26.1(c), no formal discovery may be commenced before the meeting of the parties."). Though discovery in an APA case should be rare, given Plaintiffs' proffer of expert opinion evidence Defendants should have the opportunity to determine whether they need limited discovery, such as to enable a *Daubert* motion or a rebuttal opinion, or even to obtain basic information such as that required by Fed. R. Civ. P 26(a)(2).

The Service also objects to immediately briefing summary judgment based

---

[5] This orderly approach also avoids confusion that typically arises where summary judgment briefs are filed based on extra-record material. *See Desert Protective Council v. U.S. Dep't of Interior*, No. 12cv1281-(PCL), 2012 WL 6678056, at *3 (S.D. Cal. Dec. 21, 2012) (striking extra-record materials cited by the plaintiffs in initial summary judgment briefs and directing plaintiffs to "re-file their opening brief … without reference to" the offending materials); *Rybachek v. EPA*, 904 F.2d 1276, 1296 n.25 (9th Cir. 1990) (granting motion to strike portions of petitioners' brief that includes and relies on extra-record materials).

on Fed. R. Civ. P. 56(d). "This rule should be applied with a spirit of liberality to prevent injustice to the party facing summary judgment." *Gofron v. Picsel Techs., Inc.*, 804 F. Supp. 2d 1030, 1036 (N.D. Cal. 2011) (citations omitted). The Service's briefing here identifies the general circumstances which hamstring it in preparing expedited summary judgment and other briefing, particularly the inability to lodge its administrative record with sufficient time to effectively utilize that administrative record as the basis for summary judgment briefing or oppose Plaintiffs' motion on extra-record evidence. Premature and rushed merits briefing denies the Service any opportunity for a pre-merits discovery period. *See, e.g.*, *Cortes-Ramos v. Martin-Morales*, 178 F.4th 760, 773 (1st Cir. 2026) ("when the parties have no opportunity for discovery, denying the Rule 56(d) motion and ruling on a summary judgment motion is likely to be an abuse of discretion." (citation omitted)). Regardless of whether Defendants were to actually pursue discovery, it would still be an abuse of discretion to adhere to the current merits briefing schedule where doing so eliminates all the pretrial steps typical in an APA case.

There is a second case management issue to consider here as well: imprudent and inadvertent bifurcation of Plaintiffs' claims against the Service from their imminent claims against Interior, the action agency who Plaintiffs intend to soon implead into this case. Plaintiffs' current Complaint challenges the Service's

concurrence to Interior's findings in its Biological Assessment(s) ("BA") that its proposed issuance of up to two leases for marine mineral development in the OCS is not likely to adversely affect any ESA-listed species or designated critical habitats. *See* Dkt. No. 1 ¶¶ 5, 33-35, 65-75 (providing Plaintiffs' description of informal ESA consultation that occurred).[6] The Service's role in informal ESA consultation is to timely decide whether to concur or not concur with an action agency's own determination of the likely effect of its proposed action on ESA-listed species and designated critical habitats. 50 C.F.R. § 402.13 (describing informal consultation process); *see also id*. § 402.14(b) (same). As the ESA regulations provide, the action agency—here Interior—is principally responsible for preparing the core technical analyses and determining the likely effects of its proposed action, which it then tenders to the Service for its independent review. *See id.* § 402.14(a) (an action agency must make an initial effects determination); *id*. § 402.12(b) (describing contents of BA to support action agency's effects determination).

Plaintiffs have sent notice to Interior of their intention to bring ESA citizen suit claims as well as OCSLA citizen suit claims against that agency for its own

[6] The Service will demonstrate that Plaintiffs' allegations are not a complete or entirely accurate description of the informal consultation the Service conducted with Interior over its forthcoming lease sale. But the allegations suffice to illustrate the case management point made here.

findings, including its ESA determination that its proposed lease sale is not likely to adversely affect any ESA-listed species or critical habitat. *See* Exhibit A. The 60-day notice requirement in the ESA citizen suit precludes Plaintiffs from bringing such claims until late October. 16 U.S.C. § 1540(g). Plaintiffs' motion for summary judgment is thus also, in essence, a motion to bifurcate their parallel claims against the Service and Interior challenging the agencies' conjoined ESA determinations for the same underlying activities.

Bifurcating the claims against the Service from the imminent claims against Interior would require inefficient and duplicative briefing. For example, defense of the Service's concurrence will rest in significant part on Interior's analysis presented in its BA and certain communications between the agencies. *Ctr. for Biological Diversity v. EPA,* 56 F.4th 55, 62 (D.C. Cir. 2022) (explaining that during ESA consultation the Service uses information in the BA); *cf. Ctr. for Biological Diversity v. EPA*, 141 F.4th 153, 182 (D.C. Cir. 2025) (faulting Fish and Wildlife Service concurrence for failing to address specific analysis in action agency's BA).

To provide one illustrative example, it is possible that certain issues Plaintiffs argue may require review of selected documents in the voluminous scientific literature cited in Interior's BA. *See* April 2026, Commercial Leasing for Minerals Offshore Am. Samoa: BA & Essential Fish Habitat Assessment, at 129-

63 (BA References).[7] Under Plaintiffs' view, the Service's failure to include or discuss such duplicative literature in its own administrative record would be a reason to fault the Services' concurrence, despite the fact that its consideration of, and agreement with, Interior's analysis of such technical information is easily discerned.

Plaintiffs may even aspire to prevent either agency from defending their conjoined decisions and analyses based on their administrative records. Plaintiffs' obvious goal is to obtain, if possible, expedited vacatur of the Service's concurrence before bringing Interior into the case. *See* Dkt. No. 15-1 at p. 33. If successful in that first step, they would presumably then turn to a motion for preliminary injunctive relief against Interior based on the argument that the action agency must obtain a new concurrence (or Biological Opinion) from the Service before it may conduct any lease sale. Such an approach is prejudicial to both federal agencies given that the informal consultation required that both agencies' analyses properly rest on each other's contributions.

In sum, it would be prejudicial to the Service to expedite a merits decision before the filing of the administrative record, any discovery or challenge to

[7] Interior's BA is *available at* https://www.boem.gov/marine-minerals/critical-minerals/nmfs-ba-efh-american-samoa.

Plaintiffs' extra-record evidence is allowed, and before the anticipated overlapping and related claims against Interior as the action agency are added into this case.

## IV. Plaintiffs will not be prejudiced if their claims against the Service are not expedited on the schedule they seek.

Plaintiffs will not suffer any prejudice in having to litigate their claims against the Service following a reasonable schedule for administrative record-based claims despite the potential that Interior will conduct a lease sale this November. The Service has no legal authority to control Interior's management of a lease sale or the many decisions by Interior that could follow a lease sale. This point follows from the basic ESA principle that an action agency is ultimately responsible for determining whether it has satisfied its own ESA Section 7 obligations. *Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*, 898 F.2d 1410, 1415 (9th Cir. 1990) (A federal action agency "may not rely solely on a FWS biological opinion to establish conclusively its compliance with its substantive obligations under section 7(a)(2)." (citations omitted)); *City of Tacoma v. Fed. Energy Regul. Comm'n*, 460 F.3d 53, 76 (D.C. Cir. 2006) ("[T]he ultimate responsibility for compliance with the ESA falls on the action agency."); *cf.* 50 C.F.R. § 402.15(a) ("the Federal agency shall determine whether and in what manner to proceed with the action in light of its section 7 obligations and the Service's biological opinion").

Moreover, it is doubtful whether Plaintiffs' interests would be prejudiced even if Interior were to issue a lease before a final merits decision in this case. The Ninth Circuit has expressly noted that "the risks to endangered species during the lease sale stage are virtually nonexistent" given that "only limited preliminary activities are permitted during this stage, such as geological, geophysical and other surveys." *Tribal Vill. of Akutan v. Hodel*, 869 F.2d 1185, 1194-95 (9th Cir. 1988) (addressing oil and gas leasing under OCSLA). That is exactly the limited OCSLA activity at issue here too. *Supra* at 4, citing 30 C.F.R. § 582.21. It is not currently known if or when any limited preliminary activities may be conducted under leases that Interior has not yet decided whether or when to issue. There is no imminent harm to Plaintiffs' alleged interests given that there are, at present, no leases and no third-party lessees who might undertake preliminary activities under a lease. Plaintiffs suffer no prejudice from litigating this case under a Scheduling Order that is consistent with APA rules and limits and does not unreasonably bifurcate claims.

Plaintiffs have not filed any motion for preliminary injunctive relief against the Service. Such a strategy may be unavailing where the Service lacks control over Interior's administration of OCSLA. In any event, Plaintiffs' decision to forego preliminary relief against the Service does not entitle them to dispense with the entire pre-merits preparation process simply because they are in a hurry to get

to a merits decision.

## CONCLUSION

Plaintiffs rush to get a merits decision (1) is inconsistent with the Court's Order setting a scheduling conference for October 19; (2) improperly forces the Court to decide summary judgment in the APA without the benefit of the administrative record; and (3) prejudices the Service in multiple ways, including forcing bifurcated proceedings on a collaborative consultation with Interior. On the other hand, Plaintiffs have not shown how an orderly, efficient, non-prejudicial process would harm them. Consequently, the Service requests that the Court vacate the October 30 hearing dates and hold Plaintiffs' motion for summary judgment and motion to consider extra-record evidence in abeyance, pending the entry of a scheduling order following the Court-ordered October 19 scheduling conference.

Respectfully submitted this 9th day of September 2026,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
MEREDITH L. FLAX, Deputy Section Chief
United States Department of Justice
Energy & Natural Resources Division

/s/ *John H. Martin*
JOHN H. MARTIN (Colo. Bar #32667)
Wildlife & Marine Resources Section
999 18th St., Suite 600 North Terrace
Denver, CO 80202
Tel: 303-319-5359
Fax: 303-844-1350

Email: john.h.martin@usdoj.gov

*Attorneys for Federal Defendants*

CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.4(e), I certify that the foregoing memorandum contains 5,239 words, exclusive of the caption, tables, and signature block. I have relied upon Microsoft Word to determine the word count.

*/s/ John H. Martin*
John H. Martin

## CERTIFICATE OF SERVICE

I hereby certify that, on September 9, 2026, the foregoing was electronically filed through the ECF filing system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing.

*/s/ John H. Martin*
John H. Martin