DAVID L. HENKIN #6876
HARLEY M. BROYLES #11640
EARTHJUSTICE
850 Richards Street, Suite 400
Honolulu, Hawaiʻi 96813
T: (808) 599-2436
Email: dhenkin@earthjustice.org
hbroyles@earthjustice.org

CHRISTOPHER D. EATON
(*pro hac vice*)
EARTHJUSTICE
810 3rd Avenue, Suite 610
Seattle, Washington 98104
T: (206) 343-7340
Email: ceaton@earthjustice.org

JOSEPH V. LANGKILDE III
(*pro hac vice*)
EARTHJUSTICE
1250 I Street NW, Fourth Floor
Washington, DC 20005
T: (202) 667-4500
Email: jlangkilde@earthjustice.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAIʻI

| | |
|---|---|
| FAʻASAO AMERIKA SAMOA and CONSERVATION COUNCIL FOR HAWAIʻI,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL MARINE FISHERIES SERVICE and HOWARD LUTNICK, in his official capacity as Secretary of Commerce of the United States,<br><br>Defendants. | CIVIL NO. CV-26-438 JAO-KJM<br><br>PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO CONTINUE HEARING DATE(S) ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO CONSIDER EXTRA-RECORD EVIDENCE; DECLARATION OF CHRISTOPHER D. EATON; EXHIBITS A-D; CERTIFICATE OF COMPLIANCE<br><br><u>Judge</u>: Hon. Jill A. Otake<br><u>Trial Date</u>: None Set<br><br><u>Related to ECF 20</u> |

TABLE OF CONTENTS


I. INTRODUCTION ... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ... 3

A. Plaintiffs Have Been Diligent in Seeking Summary Judgment. ... 3

B. This Court Set the Schedule for Plaintiffs' Motions in the Normal Course. ... 6

III. LEGAL STANDARDS ... 6

IV. PLAINTIFFS' PENDING MOTIONS COMPLY FULLY WITH THE FEDERAL RULES AND THIS COURT'S ORDER. ... 7

V. DEFENDANTS DO NOT ESTABLISH GOOD CAUSE FOR A CONTINUANCE. ... 9

A. Defendants Do Not Explain Why They Cannot Lodge the Administrative Record Before the October 30 Hearing ... 9

B. Even If Defendants Do Not Produce the Record Before October 30, the Absence of a Filed Record Would Not Preclude Summary Judgment. ... 12

C. NMFS's Mischaracterization of a Future, Separate Case Against MMA Does Not Justify Staying Resolution of the Claims Against NMFS. ... 15

D. Rule 56(d) Does Not Justify a Continuance. ... 18

VI. TO PROMOTE THE EFFICIENT AND EXPEDITIOUS RESOLUTION OF THIS CASE, THE COURT SHOULD DENY DEFENDANTS' MOTION AND RESOLVE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT BEFORE MMA'S PLANNED LEASE SALE. ... 21

VII. IF MMA HOLDS OFF ON ITS LEASE SALE, PLAINTIFFS HAVE NO OBJECTION TO A CONTINUANCE. ... 26

VIII. CONCLUSION ... 27

TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Am. Hospital Ass'n v. Dep't of Health & Human Servs.*,
Civ. A. No. 18-2112 (JDB), 2018 WL 5777397 (D.D.C. Nov. 2, 2018) ....8, 11

*Am. Rivers v. U.S. Army Corps of Eng'rs*,
271 F. Supp. 2d 230 (D.D.C. 2003) ....11

*Bennett v. Spear*,
520 U.S. 154 (1997) ....16, 24

*California v. U.S. Bureau of Land Mgmt.*,
277 F. Supp. 3d 1106 (N.D. Cal. 2017) ....12

*Camp v. Pitts*,
411 U.S. 138 (1973) ....20

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ....17

*City of Laguna Niguel v. Fed. Emergency Mgmt. Agency*,
No. SACV 09–0198, 2009 WL 3122490 (C.D. Cal. Sept. 28, 2009) ....14

*Conner v. Burford*,
848 F.2d 1441 (9th Cir. 1988) ....13

*Cortés-Ramos v. Martin-Morales*,
178 F.4th 760 (1st Cir. 2026) ....20

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*,
563 F.3d 466 (D.C. Cir. 2009) ....24

*Ctr. For Biological Diversity v. U.S. Fish & Wildlife Serv.*,
450 F.3d 930 (9th Cir. 2006) ....17

*Dietz v. Bouldin*,
579 U.S. 40 (2016) ....6, 21, 27

**CASES (Continued)** **Page(s)**

*Env't Prot. Info. Ctr. v. Simpson Timber Co.*,
255 F.3d 1073 (9th Cir. 2001) ....................16

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
525 F.3d 822 (9th Cir. 2008) ....................19

*Firearms Regul. Accountability Coal., Inc. v. Garland*,
Case No. 1:23-cv-00003, 2024 WL 4920007 (D.N.D. Aug. 22, 2024) ....................15

*Friends of the Earth v. Haaland*,
583 F. Supp. 3d 113 (D.D.C. 2022) ....................22, 23

*Gulf Restoration Network v. Haaland*,
47 F.4th 795 (D.C. Cir. 2022) ....................22

*Gupta v. U.S. Att'y Gen.*,
Case No. 6:13-cv-1027-Orl-40KRS, 2014 WL 12868884 (M.D. Fla. Nov. 21, 2014) ....................14

*Ironwood Homes, Inc. v. Bowen*,
719 F. Supp. 2d 1277 (D. Or. 2010) ....................7, 19

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ....................2, 21

*Marshall Cty. Health Care Auth. v. Shalala*,
988 F. 2d 1221, 1226 (D.C. Cir. 1993) ....................8

*Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*,
874 F.3d 604 (9th Cir. 2017) ....................19

*Nw. Envt'l Advocs. v. U.S. Env't Prot. Agency*,
Case No. C20-1362 MJP, 2021 WL 2206497 (W.D. Wash. June 1, 2021) ....................14

*O'Hailpin v. Hawaiian Airlines, Inc.*,
Civ. No. 22-00532 HG-WRP, 2025 WL 3492105 (D. Haw. Dec. 4, 2025) ....................7, 9

**CASES (Continued)** **Page(s)**


*Parker v. Hoglander*,
Civ. A. No. 15-926 (JDB), 2016 WL 3527014 (D.D.C. June 23, 2016) ....7

*Penland v. Mabus*,
78 F. Supp. 3d 484 (D.D.C. 2015)....14

*Planned Parenthood of Greater N.Y. v. U.S. Dep't of Health & Human Servs.*,
Civ. A. No. 25-2453, 2025 WL 2840318 (D.D.C. Oct. 7, 2025)....10, 13

*Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*,
898 F.2d 1410 (9th Cir. 1990) ....24

*Sec'y of the Interior v. California*,
464 U.S. 312 (1984)....24

*Sierra Club v. NMFS*,
797 F. Supp. 3d 440 (D. Md. 2024)....16

*Tinian Women Ass'n v. U.S. Dep't of Navy*,
976 F.3d 832 (9th Cir. 2020) ....17

*Tribal Village of Akutan v. Hodel*,
869 F.2d 1185 (9th Cir. 1988) ....25

*Wild Fish Conservancy v. National Park Service*,
No. C12-1509 BHS, 2012 WL 6615925 (W.D. Wash. Dec. 19, 2012) ....14

*Wilderness Soc'y v. U.S. Dep't of Interior*,
Case No. 22-cv-1871 (CRC), 2024 WL 3443754 (D.D.C. July 16, 2024) ....22, 23


**UNITED STATES CODE**


5 U.S.C. § 706....13

16 U.S.C. § 1536(b)(3)(A)....25

**CODE OF FEDERAL REGULATIONS**

30 C.F.R. § 581.17(a)....................27

30 C.F.R. § 582.21(d)....................25

50 C.F.R. § 402.14(k)....................13

**FEDERAL RULES**

Fed. R. Civ. P. 6(b)....................7

Fed. R. Civ. P. 26(a)(2)....................8, 9

Fed. R. Civ. P. 26(a)(2)(B)(i)....................9

Fed. R. Civ. P. 26(a)(2)(B)(ii)....................9

Fed. R. Civ. P. 26(a)(2)(B)(iv)....................9

Fed. R. Civ. P. 26(a)(2)(D)....................9

Fed. R. Civ. P. 26(d)(1)....................19

Fed. R. Civ. P. 56(b)....................2, 7, 18, 20

**LOCAL RULES**

LR 7.1(a)....................6, 8

LR 7.2....................6, 8, 18

# I. INTRODUCTION

The Marine Minerals Administration (MMA) plans to conduct its sale of deep-sea-mining leases in American Samoa on November 19, 2026, only twenty days after the hearing on Plaintiffs' motion for summary judgment. As decades of litigation over MMA's oil-and-gas leasing under the Outer Continental Shelf Lands Act (OCSLA) have shown, delaying resolution of Plaintiffs' motion until after the American Samoa lease sale has occurred would substantially increase the burdens on this Court and the parties. Successful bidders for leases will likely intervene to defend their newly acquired property interests, multiplying the filings. And, if the Court ultimately agrees with Plaintiffs that the National Marine Fisheries Service's (NMFS) blatantly violated the Endangered Species Act (ESA) in giving the green light to MMA's lease sale, there will be substantial additional litigation over whether those unlawful lease sales should be undone.

It would be far more efficient for the Court and the parties to resolve Plaintiffs' challenge to the legality of the ESA consultation now, before the lease sale. That is why Plaintiffs diligently filed their complaint under a week after securing the relevant ESA consultation documents and then their motion for summary judgment only two weeks later. The existing briefing and hearing schedule—which does not shorten time under the Local Rules—allows the Court to resolve Plaintiffs' straightforward claims before the lease sale. The existing

schedule also allows for the orderly resolution of Plaintiffs' related, but separate, challenge to MMA's lease sale, which Plaintiffs intend to file promptly after MMA publishes its final notice of sale (anticipated to be around October 19, 2026). The current schedule thus manages the Court's docket with the desired "economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

Defendants' motion to continue makes no mention of the significant, disruptive consequences of delaying resolution of Plaintiffs' motion until after the lease sale occurs. Nor do Defendants provide any assurances that MMA will hold off on its lease sale until the Court can rule. Defendants do not even tell the Court how much more time they allegedly need to respond to Plaintiffs' motions. Instead, they ask for an open-ended continuance. They seek delay for the sake of delay.

As detailed below, Defendants have not met their burden to provide good cause for a continuance. Defendants have not explained why they cannot lodge the record before the October 30 hearing or why, in any event, the Court cannot proceed based on the few key documents relevant to Plaintiffs' claims. Defendants mischaracterize Plaintiffs' plans for holding MMA to account, which provide further reasons to deny continuance. And Defendants' assertion that they *might* want discovery does not satisfy Rule 56(b). In sum, this Court should deny

Defendants' request and stick to the existing schedule, which allows the Court to rule on Plaintiffs' motion and associated request to vacate no later than November 18, 2026—the day before the lease sale.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiffs Have Been Diligent in Seeking Summary Judgment.

NMFS issued its Letter of Concurrence (LOC) for MMA's sale of deep-sea-mining leases in American Samoa on February 13, 2026. Plaintiffs would have challenged the LOC earlier, if they could have. As discussed below, despite best efforts, Plaintiffs could not secure the LOC until about a month ago, and it took another eight days of internet sleuthing to find MMA's Biological Assessment (BA), on which NMFS based its LOC. With the necessary information in hand, Plaintiffs proceeded as quickly as they could, filing their complaint challenging NMFS's illegal LOC in under a week and a motion for summary judgment only two weeks later.

Plaintiffs have long been concerned about the devastating harm that deep-sea mining would inflict on the people and environment of American Samoa. Accordingly, on December 16, 2025, Plaintiffs' counsel submitted a Freedom of Information Act request to the National Oceanic and Atmospheric Administration (NOAA)—NMFS's parent agency—for "all records related to the Bureau of Ocean Energy Management's (BOEM) consideration of marine minerals leasing for the

Outer Continental Shelf (OCS) offshore of American Samoa." Eaton Decl. ¶ 2.[1] Both NMFS's LOC and MMA's BA undeniably are responsive to Plaintiffs' request. To date, however, NOAA has not provided any of the requested records. Eaton Decl. ¶ 3.

On July 16, 2026, MMA published a press release announcing the availability of a Proposed Leasing Notice for deep-sea-mining leases in American Samoa. MMA, *MMA Drives Next Step in America's Offshore Critical Mineral Strategy* (July 16, 2026), https://www.boem.gov/newsroom/press-releases/mma-drives-next-step-americas-offshore-critical-mineral-strategy. While the press release stated that "[t]he notice, its supporting materials and the environmental analysis are now available at www.boem.gov/american-samoa," *id.*, that webpage did not contain links or references to any biological assessment or any determination by NMFS under the ESA, Eaton Decl. ¶¶ 4–5.

MMA's webpage did have a link to the environmental assessment (EA) that MMA prepared under the National Environmental Policy Act for the American Samoa lease sale. *Id.* ¶ 5. The EA suggested that ESA consultation was still ongoing. *See, e.g.*, Ex. A, at 38 (stating that the EA's analysis "will be reflected in

[1] Prior to July 2026, MMA was known as BOEM. *See* Secretarial Order 3451, *Establishment of the Marine Minerals Administration* (July 10, 2026), https://www.doi.gov/document-library/secretary-order/so-3451-establishment-marine-minerals-administration.

the consultation with NMFS"), C-7 (stating that MMA "is currently in consultation with NMFS regarding the ESA Section 7"). At the same time, the EA mentioned a "NMFS Letter of Concurrence," suggesting conversely that consultation may have concluded. *See, e.g.*, *id.* at 39.

Plaintiffs continued to search diligently on the internet for information about the ESA consultation. On or about August 4, 2026, Plaintiffs finally found NMFS's LOC by searching a NMFS database. Eaton Decl. ¶ 8. After another eight days of internet research, Plaintiffs secured MMA's BA, on which NMFS based its concurrence. *Id.* ¶ 9.

In the meantime, MMA published a Proposed Leasing Notice, announcing its intent to hold the sale of deep-sea-mining leases for American Samoa on November 19, 2026. Ex. B: 91 Fed. Reg. 44870 (July 17, 2026).

Because MMA is barreling forward with plans to open American Samoa's waters to highly destructive deep-sea mining, Plaintiffs have been moving as quickly as they can to challenge the illegal LOC on which MMA relies for its lease sale. Plaintiffs filed this lawsuit on August 18, 2026, less than a week after securing MMA's BA. ECF 1. On September 4, 2026, after identifying opposing counsel and complying with Local Rule 7.8, Plaintiffs filed their motion for summary judgment and associated request to vacate the LOC, together with a

motion for the Court to consider extra-record evidence. Eaton Decl. ¶¶ 11–13; ECF 15, 17.[2]

B. This Court Set the Schedule for Plaintiffs' Motions in the Normal Course.

Also on September 4, 2026, this Court set Plaintiffs' Motion for Summary Judgment for hearing on October 30, 2026—fifty-six days after Plaintiffs served their motions—and established a briefing schedule requiring Defendants' opposition brief on September 25, 2026—three weeks after Plaintiffs served their motions. ECF 18. On September 8, 2026, this Court set the same schedule for Plaintiffs' Motion for the Court to Consider Extra-Record Evidence. ECF 19. The Court's schedule does not shorten the times provided under Local Rules 7.1(a) and 7.2.

## III. LEGAL STANDARDS

This Court has "the inherent authority to manage [its] docket[] … with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016).

[2] Plaintiffs cannot speak to Defendants' counsel's personal knowledge when he was assigned to the case. Plaintiffs can state definitively that they made every effort, starting promptly after filing their complaint, to alert "Defendants and DOJ counsel … that Plaintiffs intended to" file "an immediate motion for summary judgment." ECF 20-1, PageID.387 n.4; *see* Eaton Decl. ¶¶ 11–12.

"Good cause is required to modify, continue, or supplement a briefing schedule issued by the Court." *O'Hailpin v. Hawaiian Airlines, Inc.*, Civ. No. 22-00532 HG-WRP, 2025 WL 3492105, at *3 (D. Haw. Dec. 4, 2025) (citing Fed. R. Civ. P. 6(b)); *see, e.g.*, *Ironwood Homes, Inc. v. Bowen*, 719 F. Supp. 2d 1277, 1286 (D. Or. 2010) (finding no good cause to continue summary judgment briefing schedule).

## IV. PLAINTIFFS' PENDING MOTIONS COMPLY FULLY WITH THE FEDERAL RULES AND THIS COURT'S ORDER.

Defendants' moving papers are peppered with unsupported claims that, in moving expeditiously to file their motion for summary judgment and related motion regarding extra-record evidence, Plaintiffs acted "contrary to rules" and attempted "to nullify" the Court's order setting a scheduling conference. ECF 20-1, PageID.384. Plaintiffs have done no such thing. Their motions comply fully with the Federal Rules of Civil Procedure and this Court's order.

Initially, contrary to Defendants' claim, Plaintiffs need not show "good cause" to file their motion for summary judgment. ECF 20-1, PageID.387. The Federal Rules permit Plaintiffs to "file a motion for summary judgment *at any time* until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b) (emphasis added). "A motion for summary judgment can thus be too late, but not too early; 'at any time' does in fact mean 'at any time.'" *Parker v. Hoglander*, Civ. A. No.

15-926 (JDB), 2016 WL 3527014, at *3 (D.D.C. June 23, 2016). In Administrative Procedure Act (APA) cases like this one, "early summary judgment motions are often appropriate, as '[t]he entire case on review is a question of law, and only a question of law.'" *Am. Hospital Ass'n v. Dep't of Health & Human Servs.*, Civ. A. No. 18-2112 (JDB), 2018 WL 5777397, at *2 (D.D.C. Nov. 2, 2018) (quoting *Marshall Cty. Health Care Auth. v. Shalala*, 988 F. 2d 1221, 1226 (D.C. Cir. 1993)).

Second, nothing in the Court's order setting the scheduling conference precludes Plaintiffs from filing an early summary judgment motion. *See* ECF 8. And the briefing and hearing schedule that the Court ordered is not "rushed," as Defendants allege. ECF 20-1, PageID.377. The Court did not set "the earliest possible hearing," *id.*, PageID.378; rather, the hearing will occur fifty-six days after service of Plaintiffs' motions, over twenty days longer than the Local Rules require, *see* LR 7.1(a). The briefing schedule likewise gives Defendants a week longer than the Local Rules guarantee to oppose Plaintiffs' motions. *See* LR 7.2. The Court's briefing and hearing schedule is set in the normal course.

Finally, Plaintiffs have not failed to provide "the mandatory expert witness report under Rule 26(a)(2)," as Defendants suggest. ECF 20-1, PageID.382.

Because the Court has neither issued a scheduling order nor set a trial date, there is not yet a deadline for Plaintiffs' expert reports. *See* Fed. R. Civ. P. 26(a)(2)(D).[3]

## V. DEFENDANTS DO NOT ESTABLISH GOOD CAUSE FOR A CONTINUANCE.

While Plaintiffs need not show good cause to file their motion for summary judgment, Defendants do need to show good cause to continue the Court's briefing schedule. *O'Hailpin*, 2025 WL 3492105, at *3. They fail to do so.

### A. Defendants Do Not Explain Why They Cannot Lodge the Administrative Record Before the October 30 Hearing.

Defendants' primary justification for a continuance is that it is allegedly premature for the Court to decide summary judgment before NMFS files its administrative record. *E.g.*, ECF 20-1, PageID.377, 385–93. However, nowhere in their brief do Defendants even assert that NMFS will not—or cannot—produce

[3] Defendants' related claim that they have been deprived of "basic information such as that required by Fed. R. Civ. P. 26(a)(2)" is baseless. ECF 20-1, PageID.392. Professor Erik Cordes's declaration (ECF 16-1) contains "a complete statement of all opinions the witness will express and the basis and reasons for them," Fed. R. Civ. P. 26(a)(2)(B)(i), his declaration's footnotes contain extensive citation to "the facts or data" Professor Cordes considered in forming his opinions, *id.* 26(a)(2)(B)(ii), and his attached resume (ECF 16-2) discloses his "qualifications, including a list of all publications authored in the previous 10 years," *id.* 26(a)(2)(B)(iv). During the Local Rule 7.8 conference, Plaintiffs offered to provide any other expert disclosures that Defendants want, but Defendants indicated no interest. Eaton Decl. ¶ 16.

the record before the October 30 hearing date. The mere fact that Defendants have not filed the record *yet* cannot justify a continuance.

There is no reason to believe Defendants cannot file the record before October 30. By the hearing, Defendants will have had seventy days following service of the complaint to compile and lodge the record. *See id.*, PageID.380 (noting service date of August 21, 2026). It is unlikely that the administrative record is voluminous. The agency action under review took barely three months from the "pre-meeting" on December 11, 2025, to issuance of the challenged LOC on February 13, 2026. ECF 16-5, PageID.207. It culminated in a three-and-a-half-page decision document that cites just a single reference (the ESA Consultation Handbook). ECF 16-6, PageID.273. It is unlikely the record will take much time to compile, if it has not already been.

Defendants, of course, have full access to the administrative record as they draft their oppositions to Plaintiffs' motions. There is no reason they cannot cite relevant portions in support of their arguments. *Cf. Planned Parenthood of Greater N.Y. v. U.S. Dep't of Health & Human Servs.*, Civ. A. No. 25-2453, 2025 WL 2840318, at *16 (D.D.C. Oct. 7, 2025) (rejecting argument that plaintiffs could not move for summary judgment before production of record and observing, "any records that defendants intended to use to defend against plaintiffs' arguments on summary judgment should be included in that record and referenced in their

briefing"). If anything, the fact that Defendants have not yet lodged the administrative record prejudices *Plaintiffs*, who have access to only those record documents that are available on the internet.

If Defendants truly believe that summary judgment should not proceed without a filed administrative record, they should lodge the record promptly. The Court can and should order them to do so. *E.g.*, *Am. Hospital Ass'n*, 2018 WL 5777397, at *3 (denying government's request to delay summary judgment briefing and ordering government to file a "certified list of the contents of the administrative record with the Court … simultaneously with any consolidated motion or opposition"). Granting a continuance instead would improperly allow Defendants to deprive Plaintiffs of timely relief simply "by delaying production of the administrative record." *Am. Rivers v. U.S. Army Corps of Eng'rs*, 271 F. Supp. 2d 230, 247 n.11 (D.D.C. 2003).

But here, Defendants have not even asserted that they will not produce the record before October 30. So their concerns about the Court being unable to decide the case on the record are wholly unsupported and do not present good cause to continue the hearing.

B. Even If Defendants Do Not Produce the Record Before October 30, the Absence of a Filed Record Would Not Preclude Summary Judgment.

Even if Defendants did not produce the administrative record by October 30, the Court can still resolve the issues presented "because they are limited to legal issues that do not depend on the administrative record, aside from the few key documents the parties [can] cite[] in their motions." *California v. U.S. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1106, 1116 (N.D. Cal. 2017) (rejecting argument that summary judgment is "premature" before administrative record has been lodged).[4] There are three issues for summary judgment. First, NMFS failed to consider any effects of post-leasing activities, limiting its concurrence to only leasing and preliminary activities. ECF 15-1, PageID.124–27. Whether NMFS must consider

[4] Defendants inaccurately assert that Plaintiffs' summary judgment motion is "based entirely on extra-record evidence." ECF 20-1, PageID.392. On the contrary, Plaintiffs' memorandum in support of summary judgment (ECF 15-1) cites almost exclusively to NMFS's LOC (ECF 16-6)—the challenged agency action—and the BA (ECF 16-5) that MMA included in its request for "expedited informal consultation." ECF 16-6, PageID.270. These key documents indisputably are part of the record. *See* ECF 20-1, PageID.395 (stating "defense of [NMFS's] concurrence will rest in significant part on [MMA's] analysis presented in its BA").

The limited additional evidence that Plaintiffs proffer—one expert declaration and two NMFS documents—falls squarely within recognized exceptions to record review. *See generally* ECF 17-1. If Defendants believe they have grounds to oppose that evidence, they can and should present that in their opposition to the pending Motion to Consider Extra-Record Evidence, not seek to delay that motion's resolution.

effects from post-leasing activities at the leasing stage is a legal question—one the Ninth Circuit has already decided. *See Conner v. Burford*, 848 F.2d 1441, 1453 (9th Cir. 1988). And NMFS's LOC and the BA it references unambiguously show that NMFS did not consider the effects of post-leasing activities. Second, NMFS failed to produce a biological opinion that complies with the requirements of 50 C.F.R. § 402.14(k). ECF 15-1, PageID.128–29. Again, whether a biological opinion was required is a legal question. And there can be no dispute that NMFS did not prepare one. Finally, NMFS failed to analyze in its LOC various effects of "preliminary activities" that MMA's BA explains can affect ESA-listed species. *Id.*, PageID.129–33. The BA shows what effects MMA found, and the LOC shows what effects NMFS evaluated; Plaintiffs have provided relevant excerpts of both to the Court. ECF 16-5, 16-6.[5] Defendants do not explain why these documents are insufficient for the Court to resolve the issues presented. *Cf.* 5 U.S.C. § 706 ("the court shall review the whole record *or those parts of it cited by a party*" (emphasis added)). Nor do Defendants identify what other types of documents from the record are necessary. *Cf. Planned Parenthood*, 2025 WL 2840318, at *16 ("[T]he administrative record makes little difference in this case, given that the materials

[5] Plaintiffs have also moved to admit NMFS's own biological opinion on Gulf of America oil-and-gas activities to demonstrate that NMFS had reason to question at least one of MMA's findings. *See* ECF 17-1, PageID.361–62.

included are so sparse and either largely already on the docket or publicly available.”).

The district court cases from the Ninth Circuit that Defendants cite to argue for delay are easily distinguished. In each case, the court declined to rule on the *Federal Defendants'* motions for summary judgment because *the plaintiffs* objected to the lack of a complete administrative record. *See City of Laguna Niguel v. Fed. Emergency Mgmt. Agency*, No. SACV 09–0198 DOC (MLGx), 2009 WL 3122490, at *7 (C.D. Cal. Sept. 28, 2009) (noting plaintiffs' concerns "regarding the completeness of the administrative record"); *Nw. Envt'l Advocs. v. U.S. EPA*, Case No. C20-1362 MJP, 2021 WL 2206497, at *5 (W.D. Wash. June 1, 2021) (noting plaintiff "requests the Court deny the motion until the full administrative record is before the Court").[6] Similar facts prevailed in two of the out-of-circuit district court cases Defendants cite. *See Penland v. Mabus*, 78 F. Supp. 3d 484, 495 (D.D.C. 2015) (denying Federal Defendant's motion to dismiss because record not filed); *Gupta v. U.S. Att'y Gen.*, Case No. 6:13-cv-1027-Orl-40KRS, 2014 WL 12868884, at *1–2 (M.D. Fla. Nov. 21, 2014) (denying Federal

[6] *Wild Fish Conservancy v. National Park Service*, No. C12-1509 BHS, 2012 WL 6615925 (W.D. Wash. Dec. 19, 2012), is the only case from the Ninth Circuit that Defendants cite involving a plaintiff's motion for summary judgment. In that case, despite questioning the timing of the plaintiffs' motion against the Federal Defendants, the court ruled on the merits. *See id.* at *3–4.

Defendants' motion for summary judgment where plaintiff objected to incomplete record).[7] These cases provide no justification for delaying summary judgment where the plaintiffs—not the Federal Defendants—filed the motion, particularly where, as here, the key record documents are before the Court and prompt resolution is critical to ensure the case's efficient and expeditious resolution.

C. NMFS's Mischaracterization of a Future, Separate Case Against MMA Does Not Justify Staying Resolution of the Claims Against NMFS.

Defendants' assertion that Plaintiffs seek to "bifurcate this case" by resolving claims against NMFS before bringing claims against MMA, ECF 20-1, PageID.378, is based on the unsupported assumption that Plaintiffs intend to "implead" MMA "into this case" once Plaintiffs' notice letter ripens, *id.*, PageID.393. Plaintiffs have no such plan. Rather, they intend to bring a separate, albeit related, lawsuit against MMA's final sale notice that, among other claims, will challenge MMA's reliance on the LOC on the grounds that the LOC is unlawful. *See* ECF 20-2, PageID.420 ("MMA may not rely on NMFS's arbitrary and unlawful—and thus invalid—LOC to proceed with leasing."). There is no "bifurcation" of claims here.

---

[7] The third out-of-circuit case simply asked the plaintiffs to refile their motion for summary judgment "with reference to the administrative record now available." *Firearms Regul. Accountability Coal., Inc. v. Garland*, Case No. 1:23-cv-00003, 2024 WL 4920007, at *1 (D.N.D. Aug. 22, 2024).

There also is nothing improper or "unusual," ECF 20-1, PageID.378, about bringing separate lawsuits against separate agencies for causes of action arising under separate statutes. It is well-established that challenges to NMFS's ESA determinations must be brought under the APA, while challenges to the action agency's ESA compliance must be brought under the ESA's citizen-suit provision. *See, e.g.*, *Env't Prot. Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073, 1078–79 (9th Cir. 2001) (citing *Bennett v. Spear*, 520 U.S. 154, 173 (1997)). A plaintiff may challenge NMFS's ESA determination for OCSLA leasing without also litigating claims against MMA in the same case. *See, e.g.*, *Sierra Club v. NMFS*, 797 F. Supp. 3d 440, 453–54, 456 (D. Md. 2024) (holding NMFS's biological opinion for OCSLA oil and gas authorizations violated APA, while noting ESA issues with BOEM's lease sale decision had been challenged (by intervenors) in a different venue).

It is also important to clarify the relation between Plaintiffs' claims against the two agencies. The claim in this case is that NMFS violated its duty to make an "independent determination" in the LOC of the effects of MMA's action. ECF 15-1, PageID.123, 130. The claim against MMA is that it may not rely on an unlawful LOC to hold the lease sale. Defendants are therefore incorrect that Plaintiffs' separate causes of action "challeng[e] the agencies' conjoined ESA determinations." ECF 20-1, PageID.395. If the Court rules here that the LOC is

unlawful, then MMA's reliance on the LOC necessarily will also be unlawful. But MMA's forthcoming reliance on the LOC does not affect whether *NMFS* has already violated the law when determining the effects of the action.

Resolving Plaintiffs' pending Motion for Summary Judgment on the current schedule has two significant benefits. First, it ensures that, in assessing whether NMFS violated its ESA section 7 duties in issuing the challenged LOC, this Court does not inadvertently "consider evidence that was not before [NMFS]," unless it falls within one of the recognized, narrow exceptions to record review. *Ctr. For Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006). Defendants suggest that, to defend NMFS's LOC, they may ask the Court to consider "documents in the voluminous scientific literature cited in [MMA's] BA." ECF 20-1, PageID.395. If a given reference in the BA was, in fact, "before [NMFS's] at the time [it] made [its] decision" to issue the LOC, that would be proper. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). But "a mere reference" in MMA's BA—and not in NMFS's "actual decision document," the LOC—"is insufficient" to include the referenced document in the administrative record for NMFS's challenged decision. *Tinian Women Ass'n v. U.S. Dep't of Navy*, 976 F.3d 832, 837 n.2 (9th Cir. 2020) (citation omitted). Keeping the lawsuits challenging NMFS's and MMA's legal violations separate avoids inadvertent commingling of the separate administrative records.

Second, and more importantly for judicial efficiency and economy, proceeding with Plaintiffs' challenge to NMFS's LOC now allows the Court and the parties to avoid a last-minute scramble on shortened time to respond to MMA's reliance on NMFS's illegal LOC to proceed with the American Samoa lease sale. As Defendants acknowledge, MMA is obligated to provide only thirty days' notice before holding the lease sale. ECF 20-1, PageID.386 (citing 30 C.F.R. § 581.17(a)). Granting Defendants' requested continuance would therefore guarantee that the Court would have to address an expedited preliminary injunction and/or summary judgment motion after MMA issues the lease sale notice, under a severely compressed briefing schedule, substantially burdening both the Court and the parties. Far better for judicial economy and efficiency to proceed under the existing, Local Rule 7.2-compliant schedule, which will allow the Court to be fully apprised of the key ESA issues before MMA issues a lease sale notice and triggers a mad rush for relief.

D. Rule 56(d) Does Not Justify a Continuance.

Defendants are also wrong that Federal Rule of Civil Procedure 56(d) justifies delaying resolution of Plaintiffs' motions. *Id.*, PageID.392–93. Under the Ninth Circuit's well-established test, "[t]o prevail on a request for additional discovery under Rule 56(d), a party must show that '(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought

exist; and (3) the sought-after facts are essential to oppose summary judgment.'" *Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 619–20 (9th Cir. 2017) (quoting *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008)). "Failure to comply with these requirements is a proper ground for denying discovery and proceeding to summary judgment." *Family Home & Fin. Ctr.*, 525 F.3d at 827 (cleaned up).

Defendants' moving papers fall far short of satisfying the Ninth Circuit's test. Defendants did not file the required affidavit, fail otherwise to set forth "the specific facts [they] hope to elicit from further discovery," and explain nowhere why the unidentified "facts are essential to oppose summary judgment." *Id.* Instead, Defendants vaguely allege a need for time "to determine *whether* they need limited discovery," ECF 20-1, PageID.392 (emphasis added), and assert that a continuance is warranted "[r]egardless of whether Defendants were to actually pursue discovery," *id.*, PageID.393.[8] Rule 56(d) demands much more. *See Ironwood Homes*, 719 F. Supp. 2d at 1286 (denying continuance where non-

---

[8] If Defendants truly want to conduct discovery, nothing stands in their way. For weeks, Plaintiffs have tried to conduct the discovery planning conference that normally precedes formal discovery, but Defendants have declined to participate. Eaton Decl. ¶¶ 13–15. Moreover, Defendants are always free to seek Court approval for any discovery they consider time sensitive. *See* Fed. R. Civ. P. 26(d)(1). They have not.

moving party did "not identify any specific facts that might be elicited through additional discovery").

The out-of-circuit authority on which Defendants rely—*Cortés-Ramos v. Martin-Morales*, 178 F.4th 760 (1st Cir. 2026)—is easily distinguished. *Cortés-Ramos* was not brought under the APA, where, as Defendants note, discovery "should be rare." ECF 20-1, PageID.392. More importantly, in *Cortés-Ramos*, the plaintiff that appealed had no access to the information needed to oppose summary judgment, which was "largely or solely" within the control of the prevailing defendant and its co-defendant. 178 F.4th at 772. In contrast, here, Defendants already possess the administrative record that is "the focal point for judicial review." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Defendants fail to explain—by the mandated affidavit or otherwise—why they cannot lodge the administrative record consistently with the Court's briefing schedule or, at minimum, attach to their filings documents from the record that is already in their possession (and on which NMFS based the challenged decision) "as the basis for summary judgment briefing or [to] oppose Plaintiffs' motion on extra-record evidence." ECF 20-1, PageID.393. Defendants' unsworn, conclusory assertions that the Court's hearing schedule would "hamstring" them cannot justify delay under Rule 56(d). *Id.*

## VI. TO PROMOTE THE EFFICIENT AND EXPEDITIOUS RESOLUTION OF THIS CASE, THE COURT SHOULD DENY DEFENDANTS' MOTION AND RESOLVE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT BEFORE MMA'S PLANNED LEASE SALE.

This Court has broad discretion "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254. To promote "the efficient and expedient resolution" of this case, the Court should exercise its "inherent authority" and keep its existing schedule, which will allow the Court to resolve Plaintiffs' motion for summary judgment no later than November 18, 2026—the day before MMA's planned lease sale—and possibly earlier. *Dietz*, 579 U.S. at 47. Failing to resolve the motion before MMA holds the lease sale will inevitably embroil the Court and the litigants in a time-consuming (and, for the parties, costly) battle over whether those lease sales can be undone, even if this Court agrees that the ESA consultation undergirding the sale was blatantly illegal. Moreover, granting Defendants' request will force the Court, Plaintiffs, and the Department of Justice to scramble to address related claims under an extremely compressed timeframe when MMA issues its final lease sale notice in the latter part of October.

While the planned American Samoa lease sale is the first involving deep-sea mining, there is long history of litigation over MMA's oil-and-gas lease sales. In those cases, whenever a court renders a decision favorable to plaintiffs after lease sales have occurred, extensive litigation over the proper remedy for the agency's

illegal conduct ensues. The government and the companies awarded leases offer a litany of arguments why it would allegedly be inequitable to order "the typical remedy for an APA violation," vacatur of the illegal agency action. *Gulf Restoration Network v. Haaland*, 47 F.4th 795, 804 (D.C. Cir. 2022). They have argued vociferously that vacatur would be "highly disruptive for the lessees," who "have paid millions of dollars to obtain their leases." *Id.* at 805. They have claimed that "any redo of the lease sales" following the government's compliance with its statutory duties "'would be tainted by prior publication of [the] lessees' proprietary valuation of the leases' following the original sales." *Id.*; *see also Friends of the Earth v. Haaland*, 583 F. Supp. 3d 113, 159–60 (D.D.C. 2022) (describing argument that participants in illegal lease sale "will have disclosed their confidential valuation of unleased acreage, making their competitors 'fully aware of which tracts [they have] targeted for potential development as well as the valuation that [they have] placed on leasing those parcels'" (citation omitted)), *vacated as moot*, 2023 WL 3144203 (D.C. Cir. Apr. 28, 2023). They have bemoaned the drain on the agency, which "'devoted significant resources and time to prepare the affected lease sale,' including soliciting and reviewing expressions of interest, responding to comments, coordinating with stakeholders, and conducting the auction." *Wilderness Soc'y v. U.S. Dep't of Interior*, Case No. 22-cv-1871 (CRC), 2024 WL 3443754, at *5 (D.D.C. July 16, 2024). They have

emphasized the difficulty of returning the revenue from the sale to the lessees. *Id.*[9] And so on.

Although Plaintiffs strongly disagree that such considerations should preclude vacatur—particularly where the defendant agency has blatantly violated the law and cannot easily correct its errors—resolving these claims is nonetheless burdensome and time-consuming for the Court and litigants alike. The simple way to avoid such burdens here is for the Court to resolve Plaintiffs' motion as quickly as possible, before MMA holds the lease sale, in which case MMA "would not need to unravel anything." *Friends of the Earth*, 583 F. Supp. 3d at 159.

Defendants conspicuously avoid discussing how granting a continuance and delaying summary judgment until after the lease sale might affect remedy. *See* ECF 20-1, PageId.397–99. They do not, for example, concede that the Court's vacatur analysis would be no different after the sale than before. Based on MMA's arguments in other litigation, it is highly likely that, if Defendants' continuance were granted, they will use the fact that the lease sale occurred before the summary judgment hearing as a reason to argue that vacatur of the LOC is then inappropriate.

---

[9] While *Wilderness Society* involved a Bureau of Land Management lease, the government has relied on this case to argue against vacatur of MMA's lease sales under OCSLA. *See, e.g.*, Ex. C, at 1, 11–12.

Defendants make just two arguments for why Plaintiffs would suffer no prejudice from a continuance. Both are red herrings.

First, they argue that NMFS "has no legal authority to control Interior's management of a lease sale." ECF 20-1, PageID.397. While NMFS may technically lack control, *but see Bennett*, 520 U.S. at 169 (noting that "in reality [a biological opinion] has a powerful coercive effect on the action agency"), *this Court's* ruling in Plaintiffs' favor would have profound legal implications for whether MMA can proceed with the lease sale. It is well-established that consultation under ESA section 7(a)(2) is required before MMA holds an OCSLA lease sale. *E.g.*, *Sec'y of the Interior v. California*, 464 U.S. 312, 338 (1984) (stating that, before holding a lease sale, "[r]equirements of … the Endangered Species Act must be met first"); *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 483 (D.C. Cir. 2009) (stating lease sale stage "requires ESA consultation"). If the Court were to vacate the LOC, then no ESA consultation decision would exist, and MMA could not legally hold the American Samoa lease sale. While Defendants correctly note that MMA cannot "rely solely on a FWS biological opinion to establish conclusively its compliance with its substantive obligations under section 7(a)(2)," ECF 20-1, PageID.397 (quoting *Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*, 898 F.2d 1410, 1415 (9th Cir. 1990)), that does not mean that MMA is free to proceed with the lease sale if the

LOC is vacated and there is no NMFS "written statement"—biological opinion or LOC—in effect to conclude ESA consultation, 16 U.S.C. § 1536(b)(3)(A).

Second, Defendants argue that "[t]here is no imminent harm to Plaintiffs' alleged interests given that there are, at present, no leases and no third-party lessees who might undertake preliminary activities under a lease." ECF 20-1, PageID.398. But that is precisely why Plaintiffs seek a ruling before the lease sale: as soon as MMA issues the leases, there *will* be lessees who can immediately begin conducting preliminary activities. *See* 30 C.F.R. § 582.21(d). And insofar as Defendants are claiming that preliminary activities cannot harm ESA-listed species, that was a question that NMFS was required to analyze in its LOC based on a consideration of all types of effects, and it failed to do so, resulting in one of Plaintiffs' legal claims. *See* ECF 15-1, PageID.129–33. The Court cannot assume that NMFS got it right—and the non-existent discussion in the LOC provides no reason to believe that NMFS did—as a basis to continue summary judgment on the merits of that issue.[10]

[10] Defendants' quotation from *Tribal Village of Akutan v. Hodel* is a third red herring. ECF 20-1, PageID.398 (quoting 869 F.2d 1185, 1194–95 (9th Cir. 1988)). The Ninth Circuit's statement nearly forty years ago about oil-and-gas leasing in Alaska did not purport to determine for all time, in all locations, for all OCSLA undertakings, and with respect to all ESA-listed species that preliminary activities can never threaten harm. Among other things, over the past four decades, the technology used for geological and geophysical surveys has changed, and substantial research has developed a better understanding of how marine

## VII. IF MMA HOLDS OFF ON ITS LEASE SALE, PLAINTIFFS HAVE NO OBJECTION TO A CONTINUANCE.

Plaintiffs' need for prompt resolution of its pending motions is driven entirely by MMA's accelerated schedule for the American Samoan lease sale, which is only two months away. If MMA were to provide assurances that it will hold off on issuing its final notice of sale—which, as discussed, would trigger expedited motions practice upon issuance—until after this Court determines whether NMFS violated the ESA in issuing the LOC that gives MMA the green light, Plaintiffs would not object to a continuance. Absent a commitment to stand down on the lease sale, preserving the existing briefing and hearing schedule is essential to avoid significantly burdening the Court and Plaintiffs.

Defendants' non-committal assertion that "Interior has made no final decision whether and when to hold a lease sale," ECF 20-1, PageID.378, gives cold comfort. MMA is acting pursuant to the Interior Secretary's order to use all emergency and other authorities to "facilitate the identification, permitting, leasing, development, production, transportation, refining, distribution, exporting, and generation of … critical minerals including, but not limited to, on … the Outer Continental Shelf." Ex. D: Secretarial Order 3417, at 2; *see* https://www.boem.gov/marine-minerals/potential-american-samoa-offshore-

---

mammals are affected by such surveys. *See* ECF 16-5, PageID.223–25 (discussing updated information to assess effects of anthropogenic sounds on marine species).

minerals-lease-sale (2025 - 2026 Chronology) (last visited Sept. 13, 2026). Defendants give this Court no reason to believe that MMA will deviate from its current plan to hold the lease sale on November 19, 2026, with the final lease sale notice issued no later than thirty days beforehand. Ex. B; *see* 30 C.F.R. § 581.17(a).

## VIII. CONCLUSION

Defendants provide no good cause to justify their request to delay indefinitely the resolution of Plaintiffs' motion for summary judgment and related motion to consider extra-record evidence. To promote "the efficient and expedient resolution" of this case, Plaintiffs respectfully ask the Court to deny Defendants' request and instead maintain the current schedule, which allows the Court to render a decision before MMA's planned lease sale. *Dietz*, 579 U.S. at 47.

DATED: September 14, 2026.

DAVID L. HENKIN
HARLEY M. BROYLES
EARTHJUSTICE
850 Richards Street, Suite 400
Honolulu, Hawai'i 96813
T: (808) 599-2436
Email: dhenkin@earthjustice.org
hbroyles@earthjustice.org

/s/ Christopher D. Eaton ________
CHRISTOPHER D. EATON
(*pro hac vice*)

EARTHJUSTICE
810 3rd Avenue, Suite 610
Seattle, Washington 98104
T: (206) 343-7340
Email: ceaton@earthjustice.org

JOSEPH V. LANGKILDE III
*(pro hac vice)*
EARTHJUSTICE
1250 I Street NW, Fourth Floor
Washington, DC 20005
T: (202) 667-4500
Email: jlangkilde@earthjustice.org

Attorneys for Plaintiffs
Fa‘asao Amerika Samoa and
Conservation Council for Hawai‘i

CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.4(e), I certify that the foregoing opposition brief is set in a proportionally spaced 14-point font (Times New Roman) and contains 6,238 words, exclusive of the caption and signature block. I have relied upon Microsoft Word to determine the word count.

DATED: September 14, 2026.

DAVID L. HENKIN
HARLEY M. BROYLES
EARTHJUSTICE
850 Richards Street, Suite 400
Honolulu, Hawaiʻi 96813
T: (808) 599-2436
Email: dhenkin@earthjustice.org
hbroyles@earthjustice.org

/s/ Christopher D. Eaton
CHRISTOPHER D. EATON
(*pro hac vice*)
EARTHJUSTICE
810 3rd Avenue, Suite 610
Seattle, Washington 98104
T: (206) 343-7340
Email: ceaton@earthjustice.org

JOSEPH V. LANGKILDE III
*(pro hac vice*)
EARTHJUSTICE
1250 I Street NW, Fourth Floor
Washington, DC 20005
T: (202) 667-4500
Email: jlangkilde@earthjustice.org

Attorneys for Plaintiffs