ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Energy & Natural Resources Division
MEREDITH L. FLAX, Deputy Section Chief
JOHN H. MARTIN, Senior Trial Attorney (Colo. Bar #32667)
JESSICA L. COLE, Trial Attorney (D.C. Bar # 1011384)
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 598-3105 (Cole); (303) 319-5359 (Martin)
Fax: (202) 514-8865
Email: jessica.cole3@usdoj.gov; john.h.martin@usdoj.gov

*Attorneys for Federal Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| FA'ASAO AMERIKA SAMOA and CONSERVATION COUNCIL FOR HAWAI'I,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL MARINE FISHERIES SERVICE and HOWARD LUTNICK, in his official capacity as Secretary of Commerce of the United States,<br><br>Defendants. | CASE NO. 1:26-CV-00438-JAO-KJM<br><br>Federal Defendants' Reply in Support of Motion to Continue Hearing Date(s) on Plaintiffs' Motion for Summary Judgment and Motion to Consider Extra-record Evidence<br><br><u>Judge:</u> Hon. Jill A. Otake<br><br><u>Argument Date</u>: Sept. 17, 2026<br><br>Related to Dkt. Nos. 15, 17, 18,19, 20, & 23 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .......................................................................................... 1

ARGUMENT ............................................................................................... 2

I. Plaintiffs' Motions are Premature Because NMFS Has Not Yet Filed the Administrative Record ............................................................ 2

II. The Current Schedule Also Significantly Prejudices NMFS Because of Plaintiffs' Concurrently Filed Motion for Leave ........................................ 7

III. Plaintiffs' Proposal is Inefficient and Prejudices Defedants by Bifurcating the ESA Claims Against NMFS and Interior. ........................................ 8

IV. Plaintiffs Will Not Be Prejudiced by Defendants' Scheduling Proposal....... 10

CONCLUSION ........................................................................................... 13

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Atieh v. Riordan*,
727 F.3d 73 (1st Cir. 2013) ....................................................................5

*Camp v. Pitts*,
411 U.S. 138 (1973) ..............................................................................3

*City of Laguna Niguel v. Fed. Emergency Mgmt. Agency*,
No. SACV 09-198 (MLGx), 2009 WL 3122490 (C.D. Cal. Sept. 28, 2009)........2

*Conn. v. U.S. Dep't of the Interior*,
344 F. Supp. 3d 279, 294 (D.D.C. 2018) ..................................................13

*Ctr. for Biological Diversity v. Haaland*,
562 F. Supp. 3d 68 (D. Ariz. 2021)............................................................7

*Desert Protective Council v. U.S. Dep't of Interior*,
No. 12cv1281-(PCL), 2012 WL 6678056 (S.D. Cal. Dec. 21, 2012)....................7

*Firearms Regul. Accountability Coal., Inc. v. Garland,*
Case No. 23-CV-00003, 2024 WL 4920007 (D.N.D. Aug. 22, 2024) ..................6

*Gupta v. U.S. Att'y Gen.*,
Case No. 13-cv-1027-Orl-40KRS, 2014 WL 12868884 (M.D. Fla. Nov. 21, 2014)..........................................................................................6

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992).....................................................................2

*Mont. Wildlife Fed'n v. Bernhardt*,
No. CV-18-69-GF-BMM, 2020 WL 2615631 (D. Mont. May 22, 2020) ...........13

*Munaf v. Geren*,
553 U.S. 674 (2008) ..............................................................................10

*Penland v. Mabus*,
78 F. Supp. 3d 484 (D.D.C. 2015) ............................................................6

*Planned Parenthood of Greater N.Y. v. U.S. Dep't of Health*,
No. 25-2453, 2025 WL 2840318 (D.D.C. Oct. 7, 2025). ....................................5

*Rybachek v. EPA*,
904 F.2d 1276 (9th Cir. 1990) ........................................................................8

*Tribal Vill. of Akutan v. Hodel*,
869 F.2d 1185 (9th Cir. 1988) ........................................................................10

**Rules**

Fed. R. Civ. P. 56(b) ..........................................................................................2

**Regulations**

30 C.F.R. § 582.12 ..........................................................................................13

30 C.F.R. § 582.21 ..........................................................................................12

## INTRODUCTION

The Court should rein in Plaintiffs' attempt to upend the orderly and fair process for resolution of claims governed by the Administrative Procedure Act. Plaintiffs have not demonstrated that a normal schedule will prejudice them or their ability to obtain any appropriate relief. Nor could they, given that even if a lease sale goes forward, the Court retains authority to vacate it and, importantly, only minor preliminary activities are allowed; any actual mining or exploratory activities could occur only after further process and environmental reviews, including under the Endangered Species Act. On the other hand, Plaintiffs' premature filings are prejudicial and inefficient because Defendants have not been afforded any reasonable opportunity to file or review the agency administrative record, litigate over the contents of that record, or take any discovery of the expert opinion evidence Plaintiffs have already proffered. Plaintiffs' rushed approach also bifurcates inter-related ESA claims against NMFS and the Department of the Interior. The Court should vacate the October 30 hearing date for Plaintiffs' two merits motions and hold these motions in abeyance until after the October 19 scheduling conference.

## ARGUMENT

### I. Plaintiffs' Motions are Premature Because NMFS Has Not Yet Filed the Administrative Record.

As we explained in our motion for a continuance, Plaintiffs' motion for summary judgment and motion to consider extra-record evidence are premature. *See* Def. Mot.[1] at 8-13. Plaintiffs' expedited approach is contrary to the Court's Order setting a Rule 16 conference for October 19, 2026. (Dkt. 8). *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."); *see City of Laguna Niguel v. Fed. Emergency Mgmt. Agency*, No. SACV 09-198 (MLGx), 2009 WL 3122490, at *7 (C.D. Cal. Sept. 28, 2009) (holding summary judgment motion "premature" because "this case is in its very early stages and a scheduling conference has not even been held"). Although Plaintiffs argue that Federal Rule of Civil Procedure 56(b) permits them to file a motion for summary judgment at the outset of litigation, Pl. Resp. at 7-8, this Rule also allows the Court to deny or stay summary judgment briefing until a scheduling conference is conducted. *See, e.g.*, Fed. R. Civ. P. 56 (2010 Amendment Note for subdivision (b), "Although the rule allows a

---

[1] "Def. Mot." refers to our memorandum in support of our motion to continue hearing dates, filed on September 9, 2026 (Dkt. 20-1).

motion for summary judgment to be filed at the commencement of an action, in many cases the motion will be premature until the nonmovant has had time to file a responsive pleading or other pretrial proceedings have been had. Scheduling orders or other pretrial orders can regulate timing to fit the needs of the case."). A continuance is warranted in this instance: the Court cannot properly consider Plaintiffs' motions—nor can Defendants respond to them—until Defendants have had the opportunity to compile and cite to the administrative record.

Plaintiffs' view that the Court can award them summary judgment based only on review of the documents that Plaintiffs place in front of it, including an expert report that was never before the agency, is implausible. As the Supreme Court has emphasized, "the focal point for judicial review should be the administrative record in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

Plaintiffs' arguments that the Court does not need the administrative record are unavailing. Plaintiffs create a strawman, repeatedly asserting, "[t]here is no reason to believe Defendants cannot file the record before October 30." *See, e.g.,* Pl. Resp. at 10. But we have not asserted—nor do we here—that NMFS cannot produce the record by October 30, 2026, if absolutely necessary. Instead, our position is that Defendants cannot properly respond to Plaintiffs' arguments without the benefit of the administrative record. While Plaintiffs are apparently

satisfied that they have the documents they need to make their case, they are not the only party in this litigation. NMFS is entitled to mount a meaningful defense and should be afforded the time needed to provide the full administrative record to its own litigation counsel. As the briefing schedule currently stands, Defendants' opposition to Plaintiffs' motion for summary judgment is due on September 25, 2026—more than one month before October 30, 2026. Filing the administrative record after briefing has concluded would not address this prejudice to Defendants.

Indeed, litigation counsel requires the administrative record to defend NMFS's letter of concurrence. *See* Pl. Resp. at 13. Contrary to its assertion, Plaintiffs do not raise only purely legal questions in their motion for summary judgment[2]. For example, Plaintiffs assert that NMFS failed to consider the effects of various preliminary activities when it issued its letter of concurrence. *See* Pl. Resp. at 13; Pl. Mot. at 22-26. Although Plaintiffs are correct that the letter of concurrence, itself, does not specifically discuss all potential effects of the future lessee's preliminary activities, an internal memorandum and other documents that

---

[2] The fact that Plaintiffs have moved for leave to file an extra-record declaration and other documents and rely on these documents in support of their motion for summary judgment belies their argument that the issues in this case are purely legal. *See* Dkt. 17; 16-1; 16-8. Indeed, Plaintiffs assert in their motion that they offer this evidence "to identify information that the agency failed to consider before concurring with the Marine Minerals Administration's 'not likely to adversely affect' determination." (Dkt. 17 at 2).

will be part of the administrative record reflect that NMFS did consider these effects. Defendants will need to rely on such documents in the administrative record to properly oppose Plaintiffs' motion for summary judgment. However, at this early stage of litigation, Defendants' counsel has only been able to review a select few documents that NMFS has shared and have not yet seen all supporting documentation. The Department of Justice will be handicapped in its defense of the Defendants if it cannot analyze all of the documents that NMFS considered in issuing the letter of concurrence, along with related communications, before it must brief the merits of this case. Although Plaintiffs cite repeatedly to *Planned Parenthood of Greater New York v. U.S. Department of Health and Human Services* in support of moving forward, that case is inapposite because there the defendants filed the administrative record while they were briefing their opposition to the plaintiff's motion for summary judgment, and they were therefore able to cite the record in their briefs. No. 25-2453, 2025 WL 2840318 at *16, n.4 (D.D.C. Oct. 7, 2025). The Court should allow Defendants time to do the same.

Finally, Plaintiffs' effort to distinguish the relevant case law falls flat. As we explained in our motion, courts have repeatedly declined to consider motions for summary judgment before a record has been compiled. *See* Def. Mot. at 9, 13 (citing *Atieh v. Riordan,* 727 F.3d 73, 76 (1st Cir. 2013) ("Allowing the allegations of a complaint to become the focal point of judicial review introduces an

unnecessary and inevitably unproductive step into the process. The relevant inquiry [of an APA claim] is—and must remain—not whether the facts set forth in a complaint state a plausible claim but, rather, whether the administrative record sufficiently supports the agency's [action]."); *Firearms Regul. Accountability Coal., Inc. v. Garland,* Case No. 23-CV-00003, 2024 WL 4920007, at *1 (D.N.D. Aug. 22, 2024) (denying summary judgment as premature where it preceded filing of agency administrative record); *Penland v. Mabus*, 78 F. Supp. 3d 484, 495 (D.D.C. 2015) (denying motion to dismiss in APA case because "[w]ithout the administrative record, the Court has no basis to determine whether [a Navy] decision should be upheld or reversed."); *Gupta v. U.S. Att'y Gen.*, Case No. 13-cv-1027-Orl-40KRS, 2014 WL 12868884, at *1 (M.D. Fla. Nov. 21, 2014) (same)). Plaintiffs assert these cases are inapposite because they all involved a challenge raised by the plaintiff to a premature motion for summary judgment. *See* Pl. Resp. at 14. However, this is a distinction without a difference; the rationale for denying a premature motion for summary judgment remains the same, regardless of which party is the movant.[3] Defendants cannot raise a proper defense, nor can the Court "determine whether or not as a matter of law the evidence in the administrative

[3] And as Plaintiffs concede in a footnote, in *Firearms Regulatory Accountability Coalition,* No. 1:23-cv-00003, 2024 WL 49200007, the court found the plaintiff's motion for summary judgment premature because it was filed prior to the administrative record. *See* Pl. Resp. at 15 n.7.

record permitted the agency to make the decision it did," *Ctr. for Biological Diversity v. Haaland*, 562 F. Supp. 3d 68, 76 (D. Ariz. 2021), without the benefit of the administrative record. Accordingly, the Court should delay Defendants' obligation to respond to Plaintiffs' motions until a reasonable date after they file NMFS's administrative record.

## II. The Current Schedule Also Significantly Prejudices NMFS Because of Plaintiffs' Concurrently Filed Motion for Leave.

As we explained in our motion, allowing this case to move forward as currently scheduled presents additional unwarranted challenges for Defendants in connection with Plaintiffs' concurrently filed Motion for Leave. Def. Mot. at 14-20. Specifically, Plaintiffs' approach precludes NMFS from any reasonable opportunity to challenge their proffer of extra-record evidence, particularly their proffered expert opinion. Disputes regarding the administrative record should be raised by Plaintiffs and resolved by the Court before summary judgment briefing commences, not concurrently with summary judgment briefing. Indeed, this orderly approach avoids the confusion that frequently arises where summary judgment briefs are filed based on extra-record material. *See Desert Protective Council v. U.S. Dep't of Interior*, No. 12cv1281-(PCL), 2012 WL 6678056, at *3 (S.D. Cal. Dec. 21, 2012) (striking extra-record materials cited by the plaintiffs in initial summary judgment briefs and directing plaintiffs to "re-file their opening

brief … without reference to" the offending materials); *Rybachek v. EPA*, 904 F.2d 1276, 1296 n.25 (9th Cir. 1990) (granting motion to strike portions of petitioners' brief that includes and relies on extra-record materials).

Setting aside Plaintiffs' heavy burden to prove the admissibility of extra-record evidence on APA claims, Plaintiffs' proposed briefing schedule would deprive NMFS of any opportunity to challenge their expert opinion evidence for reasons beyond APA record review principles, such as testing that extra-record evidence through discovery or a *Daubert* motion, or to offer its own rebuttal evidence. *See* Dkt. No. 8 ("Except as otherwise provided by L.R. 26.1(c), no formal discovery may be commenced before the meeting of the parties."). Though discovery in an APA case should be rare, given Plaintiffs' proffer of expert opinion evidence, Defendants should have the opportunity to determine whether they need limited discovery, such as to enable a *Daubert* motion or a rebuttal opinion, or even to obtain basic information such as that required by Fed. R. Civ. P 26(a)(2).

Furthermore, because Plaintiffs have relied on the extra-record evidence in their Motion for Summary Judgment, Defendants will be forced to address that evidence in the context of their response. This will require not only extra work but also will reduce Defendants' ability to brief their arguments within their allotted page limits. And inserting arguments relying on an extra-record declaration that the Court has not yet admitted risks burdening the Court with extraneous

arguments at best and misleading the Court at worst.

## III. Plaintiffs' Proposal is Inefficient and Prejudices Defendants by Bifurcating the ESA Claims Against NMFS and Interior.

Plaintiffs' rushed approach will result in duplicative briefing and a waste of judicial resources by bifurcating their ESA claims against NMFS and Interior for the same underlying activities. *See* Def. Mot. 19. Curiously, Plaintiffs defend this two-track litigation by claiming that it, "ensures that, in assessing whether NMFS violated its ESA section 7 duties in issuing the challenged [letter of concurrence], this Court does not inadvertently 'consider evidence that was not before [NMFS],' unless it falls within one of the recognized, narrow exceptions to record review." Pl. Resp. at 17. Plaintiffs' argument is incorrect, as Interior's ESA determination is necessarily part of NMFS's own decision to concur. Their argument is also inconsistent with their own actions. Plaintiffs themselves propose attaching evidence to their motion for summary judgment that was never before NMFS, with a briefing schedule so punishing that Defendants cannot properly challenge its inclusion. This approach is clearly prejudicial to Defendants.

Plaintiffs' other counterarguments are equally unavailing. Plaintiffs make the implausible assertion that bifurcation will actually result in "judicial efficiency and economy," because by the time they can bring an ESA citizen suit against Interior in late October, their time to move for a preliminary injunction before the

lease sale will be "severely compressed . . . substantially burdening both the Court and the parties." Pl. Resp. at 18. But that is precisely what Plaintiffs seek to do here with their premature motion for summary judgment. Plaintiffs' proposed summary judgment schedule is functionally similar to a request for a preliminary injunction in advance of the filing of an administrative record, but without even trying to meet the burdens of that "extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). Because Plaintiffs fail to identify any real prejudice, let alone any imminent or irreparable harm, and the current briefing schedule prejudices Defendants, the Court should adopt a longer briefing schedule, following a comprehensive scheduling conference, or hold this case in abeyance until Plaintiff files its ESA claim against Interior.

**IV. Plaintiffs Will Not Be Prejudiced by Defendants' Scheduling Proposal.**

Finally, Plaintiffs will suffer no prejudice from litigating their claims against NMFS following a reasonable schedule for administrative record review. As the Ninth Circuit has expressly noted, "the risks to endangered species during the lease sale stage are virtually nonexistent" given that "only limited preliminary activities are permitted during this stage, such as geological, geophysical and other surveys." *Tribal Vill. of Akutan v. Hodel*, 869 F.2d 1185, 1194-95 (9th Cir. 1988) (addressing oil and gas leasing under OCSLA). Although Plaintiffs assert that *Tribal Village of Akutan* should not be relied upon, this case is still binding precedent. *See* Pl.

Resp. at 25 n.10. And even assuming the Court disagrees with the Ninth Circuit, no preliminary activities are imminent. *See* Boren Dec.

Significantly, Plaintiffs fail to allege that any of the environmental impacts described in their Complaint are likely to occur while this case is pending even absent expedition, and this Court retains authority to rule on requests for preliminary injunctive relief if that possibility arises. Indeed, Interior has not even issued its final leasing notice yet. At this point, Interior has only issued a proposed leasing notice, Notice of Availability for the Proposed Leasing Notice for the American Samoa Outer Continental Shelf Pacific Mineral Lease Sale 1, 91 Fed. Reg. 44870 (July 17, 2026), and in a related press release, Interior made clear, "[i]ssuance of the notice does not guarantee that a lease sale will be held, nor does it guarantee that any exploration or collection activities will occur should MMA move forward with a sale." https://www.boem.gov/newsroom/press-releases/mma-drives-next-step-americas-offshore-critical-mineral-strategy (last visited September 15, 2026).

Even assuming the lease sale does occur in November, no preliminary activities are imminent. After the lease sale, Interior will need to ensure that the successful bidders met the requirements of the Final Leasing Notice and will need to prepare the leases for execution. *See* Boren Dec. at ¶ 5. Once executed, the leases typically become effective the first day of the month following final

signature by Interior on the lease. 30 C.F.R. § 581.23. As noted in the Proposed Leasing Notice, the lessees would be required to provide Interior with a notice of proposed activities before they can engage in any preliminary activities. *See* Boren Dec. ¶ 7. Lessees must provide Interior with these notices at least thirty days prior to initiating preliminary activities. *Id.* Interior then reviews these notices to make sure the proposed activities are consistent with the lease and other applicable requirements, including consistency with those limited preliminary activities the current ESA consultation deemed not likely to adversely affect any ESA-listed species or critical habitats. *Id.* at ¶ 8. Finally, because any leases issued would have a primary term of twenty years (meaning the lessee has up to twenty years to conduct preliminary activities, obtain an approved mining plan, and start production), these preliminary activities may not occur for months or even years after lease execution. *Id.* at ¶ 9.

Importantly, preliminary activities do not include exploration, testing, development, or production activities. 30 C.F.R. § 582.21. Rather, lessees will only be allowed to undertake such activities as high-resolution geographical surveys, limited seabed and biological sampling, and oceanographic measurements. *See* https://www.boem.gov/marine-minerals/potential-american-samoa-offshore-minerals-lease-sale (last visited September 16, 2026). To engage in exploration, testing, development, or production activities, lessees must submit a

separate plan to Interior, which it can only approve after "completion of comprehensive technical and environmental evaluations to assure that the activities described will be carried out in a safe and environmentally responsible manner" and, inter alia, "protect the environment," as consistent with applicable law including ESA Section 7(a). *Id.*; *see also* 30 C.F.R. § 582.12 (listing requirements for approval of lessee's plans).

Furthermore, this Court retains full authority in leasing cases to enjoin leases on a preliminary basis or set issued leases aside if it ultimately rules for Plaintiffs on the merits. *See, e.g., Mont. Wildlife Fed'n v. Bernhardt*, No. CV-18-69-GF-BMM, 2020 WL 2615631, *11-12 (D. Mont. May 22, 2020) (vacating oil and gas leases). Because Plaintiffs could seek to vacate the leases even after they are issued, there is no "sufficient justification" to "deviate from the normal course of APA proceedings." *Conn. v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018). Plaintiffs' desire to avoid such litigation does not justify the premature, inefficient, and prejudicial schedule they propose.

## CONCLUSION

For the foregoing reasons, Federal Defendants request that the Court vacate the October 30 hearing date currently set on Plaintiffs' motions (Dkt Nos. 15 & 17) and hold Plaintiffs' motions in abeyance until after the Court issues a superseding scheduling order. For the purposes of judicial efficiency, the Court should stay

consideration of Plaintiffs' motions until Plaintiffs bring their ESA claim against Interior, which can then be consolidated with this case.

Respectfully submitted this 16th day of September 2026,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
MEREDITH L. FLAX, Deputy Section Chief
United States Department of Justice
Energy & Natural Resources Division

/s/ *Jessica L. Cole*
JESSICA L. COLE (D.C. Bar # 1011384)
JOHN H. MARTIN (Colo Bar # 32667)
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 598-3105 (Cole); (303) 319-5359
Fax: (202) 514-8865
Email: jessica.cole3@usdoj.gov;
john.h.martin@usdoj.gov

*Attorneys for Federal Defendants*

CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.4(e), I certify that the foregoing memorandum contains 3,053 words, exclusive of the caption, tables, and signature block. I have relied upon Microsoft Word to determine the word count.

*/s/ Jessica L. Cole*
Jessica L. Cole

CERTIFICATE OF SERVICE

I hereby certify that, on September 16, 2026, the foregoing was electronically filed through the ECF filing system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing.

*/s/ Jessica L. Cole*
Jessica L. Cole